Liberty Towers Realty v. Richmond Realty and others. We'll hear from the appellant. Thank you. You may take the podium. Thank you, Your Honor, and good morning. Vincent Roldan at Ballin, Stoll, Bader, and Nadler Council for the Appellants, Liberty Towers and Liberty Towers 1 Realty. May I proceed? Yes, please proceed. Thank you, Your Honor. Your Honor, this appeal is a case about competing claims to certain property among separate Chapter 11 bankruptcy cases and a contested settlement agreement, or I should say a settlement agreement that was approved over the objection of one of the Chapter 11 debtors, over two of the Chapter 11 debtors, the Chapter 11 debtors that own these pieces of real property. As described in my brief, Your Honor, this contested settlement agreement calls for my clients, I would call them the LTR debtors in my brief, calls for my client to either affirmatively do certain things, to refrain from doing things, from waiving claims. Your client doesn't claim they were tricked into it, into the agreement, does he? The client did not say that they were tricked into it, Your Honor. They defrauded in any way? There was no claim of defraud, Your Honor. Their argument is that they got a better deal. That's correct, Your Honor. But they never really presented the better deal to the bankruptcy, to the court for approval, did they? The bankruptcy court specifically commented on the fact that it had never really seen anything in writing yet. Your Honor, I submit that they didn't have an opportunity to present that evidence with appropriate- You objected to the failure to present that, but you don't argue that you weren't given the opportunity to present it? I'm sorry, what, the question, Your Honor? You don't argue in your brief that you weren't given the opportunity to present it? I argue that it was inappropriate- I argue it was inappropriate to not conduct an evidentiary hearing. No, no, no, no, no, no, no, no, no, no, no. I ask you a specific question. You tell me where you objected to the fact that you hadn't been given an opportunity or NCC objected to the fact that they had not been given an opportunity to present pen and ink, a real existing counter offer that competed with the offer that you'd signed off on. That is, my brief does not say that, Your Honor. You're right, it doesn't say that. So, let's stick to your brief. So the court has got a settlement offer on two pieces of property that you owned and defaulted on a mortgage, right? That's correct, Your Honor. All right, and for which WF had bought at the foreclosure sale, correct? Correct, Your Honor. Then you managed to get in state court an opportunity to redeem, redemption being kind of after the fact. I'm curious, I was a state court trial judge for seven years. I never saw redemption after a foreclosure sale. This case is riddled with craziness, or unusualness, I'm sorry. And you get that, and then you do enter into some negotiations with WF, is that it? That's correct, Your Honor. And you offer up to them other properties in lieu of the wire transfer of $12.5 million, right? That's correct, Your Honor. But you never produce. You never produce the other property. You never paid the $12.5, right? You're right, to answer both judges' question, the $12.5 million was not paid in cash. However, my client did produce deeds and hand over deeds to WF Liberty. But curiously, in the settlement agreement, you say that you never redeemed the property, right? Your Honor, that's not entirely correct. The settlement agreement says that certain guarantors did not redeem the property. And I believe that's a covenant and a provision signed off by the guarantors. Had redeemed the property? That's one component, Your Honor. I mean, that's one thing that's kind of left out there. I find it curious, because I wasn't hearing that the settlement should be rejected because you actually had redeemed the property. And so therefore, the agreement was, for some reason, no longer worth dealing with. But, Your Honor, if I may respond to that, that is a component of what we would say is the impropriety of the settlement agreement. The one threshold issue is does WF has- It's not my own making. You don't claim that you were hoodwinked. You claim you were coerced. You agreed to this. What you bought into was a settlement with regard to a certain sum of money, so that Richmond ends up with the property, and NCC and some of the other creditors, their administrative expenses that were identified within that. This was a much better deal than what you got at the state courthouse door on the foreclosure sale. You had lost it. You'd lost everything. And then, Your Honor, the debtor had withdrawn from the settlement agreement because it believed it had a better offer for the property. And that is, Your Honor, that is where- It's a question whether you can withdraw from it. That is directly the issue presented by the district court. And- Put a premium on debtors going ahead and agreeing to things, and then going out and trying to negotiate better deals right up to the last minute of the court's approval under 9019. And then coming back and saying, jeez, I changed my mind, I got a better deal. Your Honor, I would say that's fully, if that were to happen, that's fully consistent with a debtor's fiduciary duty, which is recognized by certain bankruptcy courts. It certainly put a crimp on settlement plans, wouldn't it? And the flip side is, Your Honor, it would benefit the estate ultimately if the estate were to receive that better offer. Can't the bankruptcy court assess that? And assess namely whether the debtor is complying with its fiduciary obligation of duty? Yes, the court- In the context of determining whether the settlement should be approved? Yes, the court can, Your Honor. And I submit the court should do so in the context of using an evidentiary hearing where a debtor who is not a part, who is withdrawn from the settlement agreement, has an opportunity to present the evidence that he has, he or she has that evidence. I'm not going to belabor these points, but you had the opportunity to present evidence. You're asking for a technical evidence of your hearing, but you had ample opportunity to present the evidence. I don't know that ample is the right word, but- Right, yeah, no. No testimony, no depositions, no docket production, that's the type of evidence you're hearing. My brother was asking a little bit different thing. He said you had an opportunity to say to the court that the other deal was better. You said we had an opportunity to repudiate. That's a significantly different matter. If you have the right to repudiate, you cut off, it's over. Then that settlement is no longer before the court, and whatever new settlement is before the court. And I have serious doubts that you can do that, because I think that you're not just talking about a group of three or two possible creditors or three creditors. If this would be a rule for multinational corporations or huge billion dollar enterprises, this would stand Iridium on its head. I mean, this would cause all kinds of deviltry with regard to very large bankruptcies. If this is the rule that we adopt, that a debtor in possession can repudiate a settlement prior to the 9019 approval. I mean, I just can't imagine the world that the bankruptcy courts would live in. Your Honor, I think my time is up. May I have a response to that? Respond to Judge West. My only response, Your Honor, is that this is not Iridium. This is a, these are real estate cases. The rule isn't just for you. The rule isn't just for you. We don't make a Liberty Towers realty rule. We make a bankruptcy rule. May I respond to that, Your Honor? And my very brief response is that this is considered by the courts in the context of the case. And under the framework under which courts will analyze settlement agreements. And so yes, they will analyze the benefits to the estate and ultimately whether the debtor's properly. Your power to repudiate, that's a rule that cuts across the bankruptcy code. And in all bankruptcy proceedings. I'm not suggesting, Your Honor, that debtors unilaterally have the power to repudiate. I'm suggesting the courts can test whether that repudiation. So you're not suggesting the power of unilateral rescission? I'm not suggesting that, Your Honor. I'm suggesting that the court has the power to test whether that repudiation is in the best interest of the estate. Yes, that's correct. I'm not suggesting that debtors have the unilateral power to get out of settlement agreements.  Thank you, Your Honor. Repudiation to me, but go ahead. We'll hear from Richmond first. Good morning, Laurie Schwartz, Robinson Broadline, one green Genevieve Sengluck for Appellee Richmond Liberty. It's Richmond Liberty's position that the district court properly affirmed the bankruptcy court's determination and the bankruptcy court did not abuse its discretion in approving the settlement agreement. The Liberty Tower's debtors sought to rescind their support of the settlement agreement that had been approved by the bankruptcy court at the initial return date of that 1919 motion. As the court has indicated, in New York, you can't repudiate without a showing of fraud. We have to be careful with our language here, because I'm sensitive to it. You said rescind. I could appreciate the fact that they could say, look, we signed this, but we think there's a better deal out there, and we want you to think about that. And NCC then comes in and says, we've got a better deal, and Pen and Ink has it in front of the court, and they're just competing. That happens a lot. That happens. There are other creditors who come in and say, we have a better deal. This is going to be better for a broader class of creditors. Administrative claims will be paid, all kinds of stuff like that, okay? But I'm very skeptical of the ability of a debtor who signs a deal and just can pull it out from underneath everybody's feet. We agree, and with respect to the scenario where the Liberty Towers debtors and NCC each presented to the court that they have a better offer for the purchase of the properties. While those were not reduced to a writing, reduced to a motion before the court, although Liberty Towers did file a plan in November, so many months subsequent to the first hearing on the 9019 motion, that plan was never moved forward. It was filed, and then the debtor, the Liberty Towers debtor, never sought a motion to approve the disclosure statement, never sought to move that forward. What the court refers to as an amended plan? I beg your pardon? Is that what the court referred to as the court amended plan? There were a series of plans followed by amended plans, but the- Nowhere. The Liberty Towers debtor never filed motions after filing those plans and disclosure statements for their approval, which would bring it to the court for consideration. Same with NCC, they did file a contract for the purchase of these ten parcels of property, but they never filed the plan that they had proposed to the court they were going to file, and it would be forthcoming. That never actually happened. But regardless, the bankruptcy court did take into consideration each of those proposals in performing the analysis and considering the iridium factors. It's significant that the Liberty Towers debtors, they never once opposed the settlement on the basis that it fell below the lowest point in the range of reasonableness. What they did was say, we have a different offer, just like your honor was saying, and the court needs to consider it because we're a debtor and we have a fiduciary responsibility to its estate. And the bankruptcy court did that and found that the purported superior offers were not in fact superior offers. And therefore, the settlement that was presented fell above the lowest range of reasonableness and was in the best interest of the estate and creditors. Could you briefly discuss the agreement? Why is it that Richmond was the one who was given contractually the authority to seek the approval? Why wasn't it the debtor in possession? Was it because you weren't certain who the debtor in possession was because there had been a foreclosure sale? What was the reasoning for that? I don't know that I can state with any certainty what the reasoning was other than administratively, it made the most sense for one debtor. And Richmond is a debtor with the authority under 1919 to seek approval of the settlement agreement. Still a debtor in possession though. Still a debtor in possession. Neither of the LTR debtors or Richmond were operating entities. The LTR debtors were single asset real estate debtors. The property is undeveloped land. It didn't generate any income from a rent roll or anything of the like. For purposes of 1919, it's a debtor in possession. But the language refers to trustee as the debtor in possession. Correct. So, Richmond as a debtor in possession had the authority to file the 1919. You weren't paying the taxes on it, were you? I believe WF Liberty, as the owner, because they were the successful bidder at the foreclosure sale, was responsible for the taxes. Richmond didn't own the property, still doesn't own the property until there is a closing between Richmond and WF Liberty. So, what you're saying is there wasn't a true debtor in possession because WF had the referee's deed, right? The foreclosure deed, right? I believe that's in the hands of the referee, not WF Liberty at this point. So, the answer is that LTR wasn't truly a debtor in possession. And so, you kind of settled it out as to who was going to make the application for approval. Since Richmond was going to benefit the most from this, that's- I don't think that that was the actual analysis. Again, I think it was simply an administrative one debtor in all of these cases should file the 1919 motion rather than have two different debtors filing the same motion in three different bankruptcy cases and the relevant adversary proceedings. Do you practice bankruptcy court regularly? Yes. Is this a little unusual, deciding who's going to make the up in the 1919? I mean, we've never written on this. I've never actually participated in a case where there are competing debtors. So, this is an unusual circumstance, I think, for all parties involved. Where in the record does it show that Richmond, that the bankruptcy court understood that Richmond was a competing debtor in possession? In the record, in the court's decision, the oral decision, and I don't have the- Right, in the bankruptcy court's oral decision, it recognized that Richmond, as a debtor, had the authority under Bankruptcy Rule 1919 to bring the motion forward. Correct. Thank you. Thank you. We'll hear from W.F. Liberty. Hello, Your Honors. May I proceed? Please. Scott Krinsky for the other appellee, W.F. Liberty. We reiterate the arguments made by counsel for Richmond. And Judge Wesley, I think, noted a couple of salient facts. There's no fraud. It's an agreement that was negotiated for months and months. At the 11th hour, no, actually at the hearing, we were ambushed for the first time with this lack of support. There was never a formal motion to rescind. After that, basically, there were months of hearings before Judge Stong, in which it was a revolving door of new arguments. They had a constitutional argument. They had a 363 argument. They just keep making new arguments. They were given every opportunity in the world to come up with something. They came also, ultimately, with other contracts. The superior offer was ultimately abandoned. It wasn't 16-3, it was 16- No, they wanted to hold it on their property. You can't blame them for that. And nobody was sanctioned for it. I wouldn't take Mr. Rolden too much of the task for that, but- Mr. Rolden wasn't the attorney. Okay, all right, then Mr. Rolden's got nothing to do with it. You're safe, Mr. Rolden. But let me ask you this. You held on to the deeds that were offered in lieu of- No, the referee has the deeds. We do not have them. No, I'm not, I'm sorry, I apologize. You were supposed to get 12.5 million bucks, right? Which I find, I thought that was unusual. But in any event- So do we. It doesn't matter because it's just the facts of the case. And then there was some negotiations about some alternative to redemption of the cash? My understanding is there were no negotiations. It was supposed to be 12.5 and an electronic funds transfer. But in any event, the court where whether a redemption had or had not occurred was state court. It wasn't bankruptcy court. There was a stay in place. And nobody's made an argument here. I'm just trying to settle things out so I understand the whole picture. There's been no argument that a redemption actually occurred, and so therefore, this is no longer an asset on which you have a legitimate claim that you could then assign. Any complaint, any problem that Richmond had was with you and not with them. I believe that's correct. We thought that the issue of the redemption, as your honor pointed out, was put to bed with the settlement agreement. And I would just point out, in the settlement agreement, we disagree with what the appellant said. There's a representation by the guarantors. Now, the guarantors are the principles of the debtor. And there's the representation, I believe, in 6B, where they basically say no redemption occurred. Those guarantors are clearly in privity. I want to go down a side. Okay. I was just trying to understand the relationships. That's all. We also brought on an action in state court for declaratory judgment to determine whether or not there was a redemption. Okay. I would point out, again, that this has been going on a very long time, and we've been paying taxes the whole time. And they've been given every opportunity. They keep coming up with new arguments. We don't believe it's fair. And most of these arguments are just hyper-technical. Your honors have cut through it, I think. Justice Lowery asked us, I'm sorry, Judge. Judge Lowery asked- Always hope. It would be a good appointment. I was anticipating. Had asked about the opportunity. Again, there was ample opportunity to attempt to present evidence, to attempt to make arguments. Judge Stong is known for that. This was originally on, I believe, in June or July. And her ultimate ruling didn't come until January. So they were given every possible opportunity. Thank you. Thank you. Mr. Roldan, you're reserved three minutes for rebuttal. Thank you, Your Honor. Mr. Roland, what would you have presented at the hearing if you'd gotten it? If we had an opportunity, Your Honor, we'd present some testimony vis-a-vis what this better offer entails, how real it is. Did you make that argument to the bankruptcy court? That's a specific argument? As counsel said, I wasn't there, but I don't think the court didn't schedule an evidentiary hearing. The court focused on what has been presented, what's on the record. Did you make the argument in connection with trying to get a hearing that you would present this evidence? No. No. I honestly don't remember if my previous attorneys said that argument in front of Judge Stong. I'm sorry, Your Honor? Your hander is appreciated, Your Honor. May I address your questions vis-a-vis the authority to go under Rule 9019? Your Honor, what I heard my opposing counsel say was that they did so, Richmond did so, out of administrative convenience. And I'd submit that it isn't unusual, Your Honor, because it's not supposed to be done. The Rule 9019 is very explicit. A trustee or debtor in possession is to make that motion. Is there any way for the trustee or debtor in possession to delegate that authority? I submit no, Your Honor. Why not? Completely inappropriate. And I- Why is that inappropriate? Your Honor, a debtor in possession has fiduciary duties, and I cited one or two cases in my brief that shows that it's inappropriate for a debtor to delegate duties. Likewise, Your Honor, it's inappropriate for a debtor to delegate to, say, Richmond, a competitor, the authority to sell a debtor's own assets. In re-SMART, we seem to suggest that there might be some circumstances where a creditor could make the motion. Very limited, very limited circumstances, Your Honor, which I'll submit do not appear over here. SMART will- Were you a debtor in possession? Was your clients paying the taxes on the property? Your Honor, the client was not paying taxes, but they were a debtor in possession. They were, by definition- It was a foreclosure sale, and there was a referee's deed. And I take it the referee's deed hadn't been filed in the county clerk's office, but there was a referee's deed. And vis-a-vis you and the holder of the referee's deed, the holder of the referee's deed wins. Maybe not as to the rest of the world, but as to between you and the referee. Your Honor, I'll submit in bankruptcy court the debtor was still a debtor in possession. There was no trustee. Under- What's their claim to the property? They had a possessory interest, and under 1109, there was no trustee in the case, and they were literally a debtor in possession. Your adversary says that Richmond was also a debtor in possession, so what's your response to that? My response is, vis-a-vis the Liberty Towers debtors, Richmond was either a party in interest or a creditor in the Liberty cases. So Richmond is a debtor in possession in its own cases, but not a debtor in possession in the Liberty Towers cases, is my argument vis-a-vis that. And I think my opposing counsel would agree, Liberty Richmond is a debtor in possession in its own case. It's odd because the two kind of overlap each other because it's the same asset, right? Overlap each other, but the facts are, Liberty Towers is its own debtor in possession. No, I'm not certain I do or don't agree with you, but I'm going to think about that because you got me thinking now about it. I have 23, 20, I'm thinking about it, I may very, very, very quickly summarize. Just to say that I believe that we are now in the realm of the smart rule decision. I believe the very, very rare circumstances under which a creditor can seek approval of a settlement agreement over the objection of a debtor. It's not met in this case. Thank you, Your Honor. Thank you. Thank you all for bringing this interesting case.